## BILLINGS *v.* BENNETT

[No. 316, September Term, 1971.]

*Decided April 17, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN and SMITH, JJ.

*Orrin J. Brown, III,* for appellant.

*Philip D. Hale,* with whom were *Bald, Smith & Lucke* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

This appeal presents to us the question of whether the Circuit Court for Howard County (Mayfield, J.) properly granted a summary judgment on October 20, 1971, in favor of the appellee, Marguerite C. Bennett, who was the defendant below, for costs.

On April 6, 1967, Billings, who is not a member of the Bar of Maryland, filed his original Declaration in proper person in the Circuit Court for Anne Arundel County. This Declaration is an elaborate document of some seven legal-size typewritten pages and contains eight alleged causes of action. It begins by reciting that the plaintiff, Billings, sues the defendant, Marguerite C. Bennett, "as a result of deliberate, premeditated, and calculated actions on the part of the defendant, her attorney, and others, which resulted in the defrauding of the plaintiff."

The first cause of action alleged that shortly after the signing by the parties of an agreement on April 6, 1965, for the purchase by the plaintiff of all the stock held by the defendant in Edwin Bennett, Inc., a Maryland corporation, the defendant was advised, through her attorney, that contrary to paragraph 1 (b) of the agreement of April 6, 1965, providing "(b) That the inventory of stock, goods, wares, and merchandise attached hereto as Exhibit 'A' is an accurate and complete inventory of all of the stock, goods, wares and merchandise of said Corporation as of March 31, 1965, and said inventory is

shown at cost value," some 64 specifically described items with an alleged value of $890.57 were missing from the inventory of the corporation.

For the second cause of action, Billings alleged that the defendant, through her attorney, was advised that contrary to paragraph 1 (c) of the agreement, providing "(c) That the total debts, dues, obligations, liabilities and payables of said Corporation are correctly and completely shown on Exhibit 'B' attached hereto and made a part hereof, and that Seller is not aware of any other Corporate liabilities other than those as shown on Exhibit 'B', and agrees to be personally responsible for any Corporate obligations incurred prior to the date of this Agreement, not appearing on Exhibit 'B'," three accounts payable, specifically listed, were incorrectly listed with a shortage of $150.16 and six accounts payable, identified by name and amounts, totaling $427.23, were not listed at all.

The third cause of action claims that the defendant, through her attorney, was advised that contrary to paragraph 1 (d) of the agreement providing "(d) That the total receivables of said Corporation are correctly and completely shown on Exhibit 'C', and Seller is not aware of any receivables or assets other than those as shown on Exhibits 'A' and 'C'," two receivables, identified by name and by net amounts, were listed at $116.87 above their actual worth and five of the receivables listed, identified by name and amounts, totaling $435.47 were unsubstantiated, for a grand total of $552.34 of erroneous and unauthorized accounts receivable.

The fourth cause of action alleged that the defendant, through her attorney, was advised that contrary to the agreement and the balance sheet of March 31, 1965, being a part of the agreement, three errors in assets, in addition to those already set forth, were present, which were specifically identified and totaled in net amount of $4,228.61.

In the fifth cause of action, it was alleged that the

defendant, through her attorney, was advised that contrary to the agreement and the balance sheet, three errors in liabilities, in addition to those already stated, were present, which were specifically described in some detail, with a net "deficit" of $1,452.18.

The sixth cause of action claims that the defendant failed to advise the plaintiff that the Maryland Corporate Income Tax in the amount of $509.46 was unpaid for the year ending January 21, 1963, for which amount the plaintiff makes claim.

The seventh cause of action claims that the plaintiff had learned of a suit instituted by Jeppesen & Company against the corporation as a result of a claim dating back to 1963, which had been under negotiation at that time, and that in answer to a specific question by the plaintiff as to the existence of any outstanding disputes, the defendant, through her attorney, replied "none" just prior to signing the agreement.

The eighth and final cause of action claims that the defendant agreed to pay a one-fourth part of the total 1965 taxes due the City of Annapolis and the State of Maryland; but this portion of $160.08 due the plaintiff has never been paid.

The Declaration then continues:

> "Plaintiff deposes and says that in addition to the losses suffered by the eight aforementioned causes of action, he has been forced to spend added time and monies, including legal fees, on matters relative to the original purchase agreement signed with the defendant. Further, that these added expenses were incurred as a direct result, not only of the carelessness of the defendant, her attorney, and other associates, but also as a result of deliberate, calculated, and premeditated misstatement, deception, and fraud. Despite repeated demands by the plaintiff directly and through his attorneys, defendant

steadfastly refuses to admit any of plaintiff's allegations or offer any settlement."

The ad damnum clause recites:

"Wherefore, this suit is brought and plaintiff, because of the deliberate fraud, asks triple [punitive?] damages in total amount of $150,-000.00 plus interest from date of filing and any court costs or other legal fees which might be incurred."

There was a demand for a jury trial filed with the Declaration.

On May 12, 1967, the defendant demanded the production of the agreement of April 6, 1965, in accordance with Maryland Rule 326 and a photostatic copy of this agreement was filed by the plaintiff on May 26, 1967. On the same day the plaintiff filed a suggestion for removal and the Circuit Court for Anne Arundel County, on May 31, 1967, ordered that the action be removed to the Circuit Court for Howard County. This was done and on August 29, 1967, the defendant filed the general issue pleas in assumpsit—never promised as alleged and never indebted as alleged. Then follows some skirmishes in regard to interrogatories; and on January 18, 1968, Billings requested that LeRoy Bald, co-executor of the estate of Edwin Bennett, II and former secretary of the corporation, be joined as a party defendant. This request was granted by Judge Mayfield on the same day, January 18.

Bald, the new defendant, demurred to the "Request for Joining Added Parties" on the ground that the "plaintiff fails to state a cause of action against LeRoy Bald." This "demurrer" was sustained by the lower court on March 19, 1969, with leave to amend. Billings then employed local counsel, who on his behalf, on April 1, 1969, filed a motion to extend the time to amend the Declaration from April 3 to April 18, Billings—a nonresident of

Maryland—being on a business trip to Maine and not expected to return until April 10.

On April 25, 1969, local counsel for Billings, reciting that disagreement had arisen between them and a lack of cooperation by Billings, filed a motion to strike their appearance of which due notice had been given; and the lower court granted this motion the same day. On April 28, the lower court ordered Billings to employ new counsel by May 28, 1969. New local counsel was obtained; and the lower court, on June 13, granted additional time to file an Amended Declaration to June 30, 1969.

The defendant Bald on June 23, 1969, filed a motion to strike the order of June 13, 1969, extending the time for filing an Amended Declaration on the ground that it had been passed ex parte, without hearing Bald, and that the Court's ruling on Bald's demurrer had "become final and enrolled." On the same day, June 23, Bald also filed an answer to Billings' motion for extension of time to file an Amended Declaration alleging that the time for filing such an Amended Declaration had expired on April 18, 1969, at which time the lower court should have entered a judgment of non pros against Billings, and that due to the failure to file the Amended Declaration within the time allowed, the order sustaining the demurrer constituted a final judgment for costs for the defendant Bald and could not be set aside after enrollment except in case of fraud, mistake or irregularity. The defendant Bald requested a hearing on the motion and prayed that the lower court deny the motion of the plaintiff and enter an order of non pros nunc pro tunc as of April 19, 1969. An Amended Declaration, prepared by counsel for Billings, was filed in the case on June 30, 1969.

On July 8, 1969, Bald moved that the Amended Declaration "be not received" reciting that it had not been timely filed and that Bald had answered the motion for extension of time, had filed a motion to strike the order granting leave to file the Amended Declaration which had not been heard or decided.

The second local counsel for Billings, on September 30, 1969, filed a motion for leave to strike his appearance, reciting difficulty to communicate with Billings, that counsel was newly associated with a Virginia law firm and his inability to continue as counsel in the case. Judge Mayfield granted counsel for Billings leave to strike his appearance. On October 2, 1969, Billings was ordered to employ new counsel on or before November 3, 1969.

On October 21, 1969,[1] Billings, in proper person, filed a motion for postponement of the hearing, alleging that he had just received notice that his counsel has found it necessary to withdraw, and requested a reasonable delay in order to obtain new counsel. A proposed order granting a postponement of the hearing set for October 21, 1969, was attached.

On November 4, 1969, Judge Mayfield filed an opinion dated November 3, 1969, stating that Bald's motion to strike and motion ne recipiatur came on for hearing on October 21, 1969, at which hearing counsel for Bald appeared but at which neither Billings "nor any one on his behalf appeared, although proper notice of said hearing appears to have been sent to the Plaintiff." No mention, however, is made of Billings' motion for a postponement. The lower court was of the opinion that the contentions of the defendant Bald were sound and that the order of June 13, 1969, should not have been passed. It was ordered on November 3, 1969 (filed November 4, 1969) that the order of June 13, 1969, be stricken, that judgment nisi in favor of Bald be granted nunc pro tunc as of April 24, 1969, that judgment absolute be entered in favor of Bald nunc pro tunc as of May 26, 1969, and that Bald's motion ne recipiatur to the plaintiff's Amended Declaration be granted.

Billings then employed his third local counsel, who, on May 4, 1970, filed a petition and proposed order for leave to amend. The petition (or motion) recites:

1. The clerk's stamp indicates that this motion for postponement was received on October *20* at 1:20 P.M. The figure "0," however, has the figure "1" superimposed on it and the docket entries indicate that the motion was filed on October 21, 1969.

"1. The original Declaration was filed by the Plaintiff in proper person and sounds both in contract and in fraud.

"2. The original Declaration, although answered by General Issue Plea, failed to set forth the proper elements of fraud and breach of contract.

"3. That an amendment is necessary in order to promote justice."

On May 20, 1970, the defendant Bennett moved that the plaintiff's Amended Declaration be not received. After alleging the various prior proceedings, it was alleged that if it be assumed that the Amended Declaration consisting of two counts stated a cause of action, a cause of action was stated for the first time, or causes of action were stated different from any allegedly stated in the original Declaration, and are barred by the three-year Statute of Limitations.

The following day, May 21, 1970, Billings filed an Amended Declaration by his third local counsel.

Thereafter, on October 13, 1970, the defendant Bennett's motion ne recipiatur of May 20, 1970, came on for a hearing before Chief Judge Macgill who granted the motion the same day. On November 12, 1970, the defendant Bennett moved for summary judgment on the ground that there was no dispute between the parties as to any material fact and that the defendant was entitled to judgment as a matter of law because the plaintiff in his petition and order for leave to amend stated: " '2. The original Declaration, although answered by General Issue Plea, failed to set forth the proper elements of fraud and breach of contract.' and that Plaintiff has admitted his Declaration is defective and does not state a cause of action and Defendant is entitled to Summary Judgment."

Judge Mayfield on October 20, 1971, filed a memorandum and order granting a summary judgment in favor of the defendant Bennett, the costs to be paid by the

plaintiff. Judge Mayfield was of the opinion that in view of the prior proceedings, the statement appearing in the petition (or motion) for leave to amend, filed on May 4, 1970, that the original Declaration "failed to set forth the proper elements of fraud and breach of contract" and the plaintiff being "bound by his pleadings," the lower court "cannot, and does not, find any material fact in dispute."

A timely appeal was taken by Billings from the order of October 20, 1971.

In our opinion, the record indicates that there are material facts in dispute in the case and that summary judgment should not have been granted so that we will reverse the order of October 20, 1971, and remand the case for further proceedings.

The basic error of the lower court was in treating the "admission" of counsel in the motion for leave to file an Amended Declaration that the original Declaration "failed to set forth the proper elements of fraud and breach of contract" as an admission for the purposes of the case that Billings could not *prove* a prima facie case once the *pleadings* were in order. The statement was *in regard to the pleadings* and is *not a stipulation in regard to the facts ultimately to be proved in the case.* It must be kept in mind that in the Maryland Rules there is no Rule comparable to Federal Rule 12 c for judgment on the pleadings, so that in Maryland a deficiency in the allegations must be challenged by demurrer or appropriate proceedings at the time of trial for a directed verdict, if appropriate, or possibly other proceedings.

Although the original Declaration was not artfully drawn, its allegations, together with the filing of the agreement itself on May 26, 1967, as demanded by the defendant Bennett, appear to us to state a cause of action (see *Kline v. Lightman,* 243 Md. 460, 478-79, 221 A. 2d 675, 686 (1966)), bearing in mind the provisions of Maryland Rule 301 c that a clear statement of facts necessary to constitute a cause of action shall be sufficient without reference to mere form. In the agreement, the

third "Whereas" clause states that the Seller (defendant Bennett) "agrees to transfer all Corporate Stock to Buyer, whereby Buyer shall receive title to all of the inventory, stock, goods, wares, merchandise, accounts receivable, and all of the other assets of said business, together with the debts, dues, obligations, liabilities and payables of said Corporation, * * *." The body of the agreement then contains the provisions alleged in the first, second and third causes of action in the original Declaration with schedules A, B, and C, which, with the balance sheet as of March 31, 1965, were attached to the agreement and, as indicated, were filed in the case with the agreement. As we have stated, the original Declaration alleges items of inventory missing from the items listed on Exhibit "A"; incorrectly listed items of accounts payable as shown on Exhibit "B" and some items not listed at all; incorrect receivables listed on Exhibit "C" and five listed accounts receivable unsubstantiated by any corporate records whatsoever; and, errors in items appearing in the balance sheet and various undisclosed items. It is true that there appears to be a blending of tort and contract in the last paragraph of the original Declaration already set out in full, with an attempt to obtain "triple" [punitive] damages for fraud; but many of the plaintiff's alleged "causes of action," when considered with the agreement itself, appear to us to in fact state a cause of action in contract for breach of the agreement, however inartfully drawn. It is quite understandable that counsel desired to file an Amended Declaration to state in more precise language the basic allegations in the original Declaration and, in our opinion, the statement of counsel in the motion of May 4, 1970, for leave to file an Amended Declaration is directed to the pleadings and not to the existence or nonexistence of the ultimate facts to be proved. With the filing of the general issue pleas in assumpsit, issue was joined upon the facts alleged in the original Declaration and in the agreement so that it cannot be said in this case that there was no dispute as to material facts. Hence, it was error

for the lower court to grant summary judgment in favor of the defendant Bennett.

Inasmuch as the case must be remanded for further proceedings, we deem it to be appropriate, pursuant to Rule 885, to indicate our opinion in regard to certain aspects of the case for the guidance of the lower court. Although Billings has caused much delay in the case by his succession of local counsel and the like, the record indicates that some of the delay has resulted from other causes as well. We point out that the last Amended Declaration filed on May 21, 1970, has never been stricken out or otherwise disposed of. It contains a first count sounding in tort for fraud and deceit and claims compensatory damages of $50,000.00 and punitive damages of $50,000.00. It contains a second count sounding in contract and claims $50,000.00 as compensatory damages. The basic allegations are largely a briefer statement of the allegations of fact contained in the original Declaration, but more artistically drawn. It appears to us that the expeditious way to get the case, on the remand, at issue promptly would be to grant leave to Billings to file the Amended Declaration, already filed on May 21, 1970, nunc pro tunc as of that date, with leave to the defendant Bennett thereafter to file appropriate pleadings to that Amended Declaration in regular course within 20 days from the date of the order granting such leave. Hopefully, this will result in a prompt disposition of the case.

*Order of October 20, 1971, reversed and the case is remanded for further proceedings in accordance with this opinion, the costs below and in this Court to abide the final result in the lower court.*